## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| NORTHSHIP LIMITED, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-08-243 |
| | § | |
| M/V SAPPHIRE I and | § | |
| KALITERI MARITIME S.A., | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This maritime case is before the Court on the Motion for Countersecurity ("Motion") [Doc. # 23] filed by Kaliteri Maritime S.A. ("Kaliteri"). Plaintiff Northship Limited ("Northship") filed a Response [Doc. # 34], and Kaliteri filed a Reply [Doc. # 37]. Having reviewed the full record and governing legal authorities, the Court **grants** the Motion and requires countersecurity in the total amount of $325,000.00.

## I.      BACKGROUND

Kaliteri is the registered owner of the M/V SAPPHIRE I, a general cargo vessel. Kaliteri and Northship entered into a Time Charter agreement dated August 6, 2008 (the "Time Charter"), under which Kaliteri chartered the M/V SAPPHIRE I to Northship, with Northship having the right to cancel the Time Charter if the vessel was off hire for twenty (20) consecutive days.

Northship filed this lawsuit alleging that the vessel went off hire when it suffered a main engine breakdown on November 19, 2008, and remained off hire until at least December 16, 2008, when the lawsuit was filed.  Northship alleges that it properly exercised its right to cancel the Time Charter, but Kaliteri refused to accept the notice of cancellation and to reimburse Northship for advance payments made before Northship was aware that the vessel was off hire.  The vessel was seized and Northship was required to post security in the amount of $325,000.00.

Kaliteri filed a Counterclaim [Doc. # 24], asserting that the vessel was not off hire while it was being towed to Galveston, Texas, where it arrived on November 23, 2008.  Kaliteri argues that a new twenty-day period began at that time, ending when the repairs were completed on December 13, 2008.  Based on its position that a vessel under tow is not off hire, Kaliteri asserts that Northship wrongfully terminated the Time Charter and owes Kaliteri more than three million dollars.  Kaliteri seeks countersecurity of $3,158,033.45 plus additional security for arbitration costs in the amount of $100,000.  Kaliteri's request for countersecurity has been fully briefed and is ripe for decision.

## II.   ANALYSIS

Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides in relevant part:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

FED. R. CIV. P. SUPP. R. E(7)(a).  The rule is intended to impose equality on the parties as regards security.  *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 638-39 (1924) (construing former Admiralty Rule 53). Whether countersecurity should be required and, if so, in what amount are matters within the trial court's discretion.  *Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400, 403 (5th Cir. 1987).  "[T]he Court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection."  *Id.* at 404.

In deciding whether and in what amount to require countersecurity, the Court must consider the party's financial ability to post countersecurity.  *Id.* at 403 (citing *The Beaumont*, 8 F.2d 599, 601 (4th Cir. 1925)).  "Courts should not require countersecurity in an amount so great that the original plaintiff is forced to give up his initial claim because he cannot produce the required countersecurity."  *Seatrade Group N.V. v. 6,785.5 Metric Tons of Cement*, 2006 WL 3741904, *2 (S.D. Tex. Dec.

15, 2006) (Rosenthal, J.) (citing *Titan*, 808 F.2d at 404-05).  In this case, Northship has shown that it can post countersecurity in an amount no higher than $325,000.00. On this basis, an appropriate amount of countersecurity is $325,000.00.

Additionally, "the court should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant."  *Titan*, 808 F.2d at 404.  In this case, Kaliteri's position that a vessel that does not have a functioning main engine and must be towed into port is not "off hire" during the time it is being towed is counterintuitive and unsupported by any legal authorities cited to or discovered through the Court's own research.  This case, however, is still at an early stage and the merits of the dispute are to be determined in an arbitration proceeding in London.  Consequently, the Court is not prepared to hold that Kaliteri's counterclaim is frivolous and, on that basis, deny countersecurity.  The Court, however, exercises its discretion to require countersecurity only in an amount that reflects the questionable nature of Kaliteri's counterclaim.  On this basis, an appropriate amount of countersecurity is $325,000.00.

The Court notes with approval the practice of its sister court to impose countersecurity in an amount limited to the amount of "security posted on the original claim" and thereby achieve "equality" between the parties on the security issue.  *See*

*Seatrade*, 2006 WL 3741904 at *3.  On this basis, an appropriate amount of countersecurity is $325,000.00.

## III.   CONCLUSION AND ORDER

Having considered Northship's financial ability to pay countersecurity, the questionable nature of Kaliteri's counterclaim, and the reasonable practice of imposing countersecurity in the same amount required for security on the original claim, it is hereby

**ORDERED** that Kaliteri's Motion for Countersecurity [Doc. # 23] is **GRANTED** to the extent that the Court will require countersecurity in the total amount of **$325,000.00**.  This amount includes countersecurity for the counterclaim as well as for Kaliteri's anticipated arbitration costs.[1]

SIGNED at Houston, Texas, this **20th** day of **March, 2009**.

Nancy F. Atlas
United States District Judge

---

[1]   The Court takes no position regarding whether Kaliteri may request additional countersecurity from the arbitrator.